IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

CRISTY LEE RIPPLE,

    Plaintiff,

        v.                 CIVIL NO.: WDQ-11-3279

RAVI YALAMANCHILI, M.D.,
et al.,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Cristy Lee Ripple sued Ravi Yalamanchili, M.D., and Ravi Yalamanchili, M.D., P.A., (collectively the "Defendants") for negligence. Pending are the Defendants' motions *in limine* to limit expert testimony, to exclude evidence of medical expenses and lost wages, and for rulings on objections to the video deposition of an expert witness. ECF Nos. 47, 48, 55. For the following reasons, the Defendants' motions will be denied.

I.    Background[1]

On July 31, 2007, Ripple had an MRI because of her severe back pain. ECF No. 43 at 1. On September 27, 2007, Ripple met with Dr. Yalamanchili, a board-certified neurosurgeon about her back pain. ECF No. 43 at 1, 4. Dr. Yalamanchili recommended a

---

[1] The background is from the parties' submission in the joint pretrial statement. ECF No. 43.

left discectomy at the L5-S1 level of the spine.[2] *Id.* On October 4, 2007, Dr. Yalamanchili operated on Ripple at Frederick Memorial Hospital in Frederick, Maryland. *Id.* On October 24, 2007, Ripple returned to Dr. Yalamanchili for her post-operative visit and reported severe pain. *Id.* at 4. On October 29, 2007, another MRI was performed. *Id.* at 2, 4. On October 31, 2007, Dr. Yalamanchili operated on Ripple for what he told her was a recurrent problem with the disc originally causing her pain, L5-S1. *Id.*

On November 16, 2011, Ripple sued the Defendants for medical negligence. ECF No. 1. On October 4, 2012, the Defendants deposed Stuart Lee, M.D., one of Ripple's neurosurgery experts. *See* ECF No. 47-2 (hereinafter "Dr. Lee's Dep."). In his deposition, Dr. Lee testified about the inaccuracy of Ripple's medical records:

> Q. Okay. Now we covered your opinions regarding standard of care deviations. Are there any other opinions that you hold regarding standard of care other than what we've now talked about?
>
> A. I would say my -- I would just maybe answer that question broadly. I do not believe that the patient had any surgery at the first surgery at L5-S1. And therefore I think that the second MRI -- in my opinion the second MRI confirmed that there were no operative changes at L5-S1. So one of my biggest problems with this case as the

---

[2] A discectomy is the excision, in whole or in part, of an intervertebral disk. *See* Stedman's Medical Dictionary, 116100 (Lippincott, Williams & Wilkins, 27th ed. 2000).

standard of care issue is that I believe the records are not correct. I think that the patient did not have any surgery at L5-S1 and I think that was very obvious in the MRI report that I assume was available to Dr. Yalamanchili so I don't think his records that he operated on a recurrent disc at the second surgery are correct. I think he was operating for the first time at L5-S1.

Q. Okay

A. So I think -- long answer to your question, it really revolves around the medical record.

Q. Okay. As far as the medical records are concerned, did the medical records, in the way in which they were done cause harm to the patient in this case?

A. I don't think the records themselves caused harm. I would agree with you on that.

Q. All right, So --

A. I guess I would supplement that answer as to whether or not you think misleading the patient causes them harm. In my opinion that probably does cause them harm.

Dr. Lee's Dep. 59:5-60:10. Dr. Lee also testified about

causation:

A. And in my opinion, having two surgeries versus one would [lead] certainly to more scarring. There's no question that even after a few weeks there's some scarring that may make it a little bit harder to get back into the spine, not great, not significant, but there is going to be more scarring from a second operation. And I think she does have some pain related to L4-5 level. How much of that is L4-5, how much is L5-S1, I have no way to quantify nor do I think anyone else can.

Q. So basically as I understand it, you believe that two surgeries were -- made the scarring worse and the

3

cumulative effect made it worse than what it would have been otherwise?

A. I think so. Again, I can't quantify that, I think the terms you all like to use, more likely than not, that's the case, but how much of her pain is from one surgery and how much from a second surgery, I don't think anyone can quantify.

Q. So you can't say to a reasonable degree of medical probability what effect the first surgery versus the second surgery had?

A. I cannot, no.

Dr. Lee's Dep. 55:12-56:8. On July 26, 2013, Ripple deposed Djamil Fertikh, M.D., one of her expert witnesses. *See* ECF No. 56-1.

On October 25, 2013, the Defendants moved *in limine* to exclude certain testimony of Dr. Lee. ECF No. 47. On November 1, 2013, the Defendants moved *in limine* to exclude evidence of medical expenses and lost wages related to the first surgery performed by Dr. Yalamanchili, and to limit evidence of Ripple's past medical expenses. ECF No. 48. On November 8, 2013, Ripple opposed the Defendants' motion to exclude expert testimony. ECF No. 51. On November 12, 2013, Ripple opposed the Defendants' motion to limit evidence of her medical expenses and lost wages. ECF No. 53. On November 13, 2013, the Defendants moved for an order overruling objections made during the video deposition of Dr. Fertikh. ECF No. 55. On November 13, 2013, Ripple opposed the motion. ECF No. 57.

II. Analysis

    A.    Motion to Limit Expert Testimony

        1.    Incorrect Medical Records

The Defendants assert that Dr. Lee should be prohibited from introducing opinion evidence that the medical records are incorrect. *See* ECF No. 47-1 at 5. The Defendants argue that Dr. Lee's opinions about the inaccuracy of Dr. Yalamanchili's medical records are irrelevant because the alleged violation did not harm Ripple. *Id.* The Defendants further contend that if Dr. Lee's opinions are relevant, they should be excluded as prejudicial under Fed. R. Civ. P. 403. *Id.* Ripple argues that the untruthful medical records breached the standard of care and caused her harm because Dr. Yalamanchili did not inform her of his error. ECF No. 51 at 6.

Evidence is relevant if it has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. Fed R. Evid. 401. Evidence that is not relevant is generally not admissible. Fed R. Evid. 402. Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice. Fed R. Evid. 403. "A district court has wide discretion in admitting or excluding evidence under Rule 403." *United States v. Kelly*, 510 F.3d 433, 437 n.3 (4th Cir. 2007) (internal quotation marks omitted).

Although the Defendants argue that Dr. Lee's testimony is irrelevant because the inaccurate medical records did not harm Ripple, Ripple alleges that Dr. Yalamanchili misrepresented the first surgery to obtain her consent for the second. Dr. Lee's testimony about the discrepancies between the medical records prepared by Dr. Yalamanchili and the MRI makes it more probable that Dr. Yalamanchili breached a standard of care in misleading Ripple.[3] Accordingly, the testimony is relevant, and the Defendants have not shown how the admission of this testimony would be unfairly prejudicial. The Defendants' motion to exclude Dr. Lee's testimony about the inaccurate medical records will be denied.

2. Causation

The Defendants argue that Dr. Lee's causation opinions are speculative and should be prohibited because he cannot say to a reasonable degree of medical probability how much of Ripple's pain is the result of the first surgery versus the second surgery. ECF No. 47-1 at 5. Ripple contends that Dr. Lee can offer his opinions about the cumulative effect of a second, unnecessary surgery on Ripple's symptoms. ECF No. 51 at 8.

Under Fed. R. Evid. 702, expert testimony is admissible if it will assist the trier of fact and is (1) based on sufficient facts or data, (2) the product of reliable principles and

---

[3] See Dr. Lee's Dep. 59:5-60:10.

methods, and (3) the principles and methods have been applied reliably to the facts of the case. Fed. R. Evid. 702. Evidence is admissible under Rule 702 if it "rests on a reliable foundation and is relevant." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 795 (1993); *see also Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). "A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) (*citing Daubert*, 509 U.S. at 592-93).

Dr. Lee opined, to a reasonable degree of medical certainty, that the cumulative effect of two surgeries rather than one has resulted in more pain.[4] Dr. Lee's causation opinion is based on his background, education, training, and experience as a neurosurgeon, and his review of Ripple's medical records and MRI imaging reports. *See* ECF No. 51-1 at 1 ("Dr. Lee's Expert Report"). Dr. Lee also testified that Ripple's records indicate that she has some symptoms related to the first surgery on L4-5. Dr. Lee's Dep. 54:10-19. Dr. Lee's inability to

---

[4] *See* Dr. Lee's Dep. 55:12-56:8. "The cumulative effect of two surgeries, rather than a single procedure to address the L5-S1 herniation and its attendant symptoms and findings, have adversely affected Ms. Ripple's prognosis and will make further pain, scarring, degeneration, and loss of function likely." *See* ECF No. 51-2 at 2 ("Dr. Lee's Expert Report").

quantify Ripple's current pain from the first surgery alone does not mean his causation opinion about the cumulative effect of the unnecessary surgery is speculative.

B.  Motion to Limit Evidence of Medical Expenses

1.  Medical Expenses and Lost Wages Related to the First Surgery

The Defendants argue that Ripple should not be permitted to offer evidence of damages from the first surgery. ECF No. 48-1 at 3. Ripple concedes that evidence of medical expenses and lost wages related to her first surgery on October 4, 2007, should not be presented to the jury. ECF No. 53 at 2. Ripple stipulates that she will not present evidence of the damages related to her first surgery. ECF No. 53-1 at 1. Accordingly, the Defendants' motion to exclude this evidence will be denied as moot.

2.  Total Amount of Medical Expenses

The Defendants contend that Ripple should only be permitted to offer evidence of her past medical expenses that were paid by or on behalf of Ripple, or that are owed by Ripple, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-2A-09(d)(1). Section 3-2A-09(d)(1) limits the verdict for past medical expenses to: (1) "The total amount of past medical expenses paid by or on behalf of the plaintiff;" and (2) "the total amount of past medical expenses incurred but not paid by or on behalf of the plaintiff

for which the plaintiff or another person on behalf of the plaintiff is obligated to pay." Md. Code Ann., Cts. & Jud. Proc. § 3-2A-09(d)(1).

In Maryland, the collateral source rule permits an injured person to recover all her provable tort damages, "regardless of the amount of compensation which the person has received for [her] injuries from sources unrelated to the tortfeasor." *Motor Vehicle Admin. Of the Md. Dep't of Transp. v. Seidel Chevrolet, Inc.*, 326 Md. 237, 253 (Md. 1992). The collateral source rule prohibits the presentation of evidence about expenses that have been or will be paid by insurance. *See Lockshin v. Semsker*, 412 Md. 257, 285 (Md. 2010); *Danner v. Int'l Freight Sys. of Washington, LLC*, 855 F. Supp. 2d 433, 475 (D. Md. 2012). In reconciling Section 3-2A-09(d)(1) with the collateral source rule, the Maryland Court of Appeals has held that the statute allows collateral source evidence of write-offs and discounts to be presented to the court after the jury verdict. *See Lockshin*, 412 Md. at 286. Accordingly, the Defendants' motion to limit the evidence of past medical bills that Ripple presents to the jury will be denied.

    C.    Motion for an Order Overruling Objections in Video Deposition

The Defendants move for rulings on the objections made by Ripple in the video deposition of Dr. Fertikh. ECF No. 55. In

an October 28, 2013 letter, the Defendants offered to withdraw several questions and requested Ripple to withdraw several objections. See ECF No. 56-2 at 1. When Ripple failed to respond to the letter, the Defendants moved for the Court's ruling on the listed objections. See ECF No. 55 at 2. However, in a November 13, 2013 letter, Ripple agreed to withdraw the requested objections.[5] Accordingly, the Defendants' motion for a ruling on the objections will be denied as moot.

III. Conclusion

For the reasons stated above, the Defendants' motions will be denied.

_10/14/13_
Date

_/s/ William D. Quarles_
William D. Quarles, Jr.
United States District Judge

---

[5] The Defendants offered to withdraw questions at 34:8-13, 53:8-12, and 69:15-20. ECF No. 56-2. The Defendants requested Ripple to withdraw 34:3-5, 53:17-18, and 57:20-21. Id. In the November 13, 2013 letter, Ripple agreed to the redaction of lines 33:19-34:8, 53:8-19, 57:15-58:5, and 69:15-19. See ECF No. 57-1.